# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| KETTERING COLLEGE, | |
| Petitioner, | CASE NO.: _____ |
| v. | JUDGE: _____ |
| THE HIGHER LEARNING COMMISSION, formerly known as THE HIGHER LEARNING COMMISSION—A COMMISSION OF THE NORTH CENTRAL ASSOCIATION OF COLLEGES AND SCHOOLS, | |
| Respondent. | |

## PETITION TO COMPEL ARBITRATION

Petitioner, Kettering College, by and through its attorneys respectfully petitions this Court for an order compelling Respondent The Higher Learning Commission ("HLC") to arbitrate, in accordance with Chapter B, Policy No. INST.B.30.020, Paragraph 13 of HLC's Policy Book, and pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16. This petition is supported by the accompanying Memorandum of Points and Authorities and the Declarations of Robert D. Crockett ("Crockett Decl.") and Brian D. Walters ("Walters Decl.") in support thereof.[1] For this petition, Kettering College alleges as follows:

## INTRODUCTION

1. Respondent, The Higher Learning Commission, formerly known as The Higher Learning Commission—A Commission of the North Central Association of Colleges and

---

[1] The Crockett Declaration is attached hereto as Exhibit A. The Walters Declaration is attached hereto as Exhibit B

Schools[2], is a not-for-profit corporation incorporated in the State of Illinois with its principal place of business in Chicago, Illinois.

2. HLC is one of seven "regional accreditors" for institutions of higher education which form the Council of Regional Accrediting Commissions.

3. HLC is recognized by the United States Department of Education and the Council for Higher Education as the assigned regional accrediting organization for the 19-state North Central region, including the State of Ohio.

4. HLC has exclusive jurisdiction over colleges and universities in Ohio.

5. Accreditation is a voluntary process by which degree-granting, post-secondary educational institutions demonstrate their credits and degrees meet minimum standards.

6. Accreditation decisions have two major effects: (1) A regionally accredited college or university qualifies to participate in federal student aid programs under Title IV of the Higher Education Act of 1965 ("HEA") (20 U.S.C. §§ 1070-1099d); and (2) other colleges and universities usually will not accept transfers or graduate school admissions without regional accreditation

7. The United States Department of Education has legal responsibility for the oversight of accrediting agencies for the purposes of Title IV of the HEA.

8. Petitioner, Kettering College, is a college in Ohio accredited by HLC. Kettering College is devoted primarily to providing health sciences degrees.

9. Kettering College has been accredited by HLC or its predecessor for nearly fifty years.

---

[2] The North Central Association of Colleges and Schools ("NCA") was dissolved in July 2014.

10. Kettering College is an unincorporated division, and registered trade name, of Kettering Medical Center. Kettering Medical Center is a non-profit corporation incorporated in the State of Ohio with its principal place of business in Kettering, Montgomery County, Ohio. Kettering Medical Center is affiliated with Kettering Health Network. Kettering Health Network is a registered trade name of Kettering Adventist HealthCare, a non-profit corporation incorporated in the State of Ohio with its principal place of business in Dayton, Montgomery County, Ohio.

11. As a division of Kettering Medical Center, Kettering College receives pass-through Medicare funding for its educational programs pursuant to 42 C.F.R. § 413.85.

12. Kettering College is chartered by the North American Division of the Seventh-day Adventist Church (the "Church").

13. The Church and Kettering Health Network control the makeup of Kettering College's Board of Directors.

14. The Church has a religious mission to provide healing sciences to the world. Kettering College is one of the Church's activities to provide such sciences.

15. HLC has mandated, in alleged accordance with HLC's Bylaws, Eligibility Requirements, and Criteria for Accreditation and Assumed Practices, that Kettering College divest itself from Kettering Medical Center and incorporate as a separate institution, with a separate, independent governing board, as a condition of future accreditation.

16. Kettering College has formally requested an exemption from the requirement on multiple occasions, but HLC has refused to consider whether Kettering College is exempt from the alleged incorporation requirement.

17. HLC continues to assert authority to mandate Kettering College to divest itself from Kettering Medical Center and incorporate as a separate institution, with a separate, independent governing board.

18. To require Kettering College to separately incorporate is beyond the scope of HLC's published policies and bylaws, would eliminate Kettering College's pass-through Medicare funding of its programs, and would divest the Seventh-day Adventist Church of its ability to manage the curriculum and funding control of one of its colleges. 20 U.S.C. § 1099b; *see also* 34 C.F.R. § 602.18.

19. Kettering College brings this petition to compel HLC to arbitrate in accordance with HLC's Policy Book, published November 2017, which includes a requirement that educational institutions accredited by HLC agree to arbitrate disputes between HLC's Board of Trustees and the institution. A true and correct copy of HLC's Policy Book is attached to petitioner's accompanying Appendix as Exhibit 1 [Appx_005-242] and incorporated herein.[3] Chapter B, Policy No. INST.B.30.020, titled, "Institutional Obligations of Affiliation," at Paragraph 13[4], states as follows:

> 13. The institution agrees to accept binding arbitration in the event of an action by the Commission's Board of Trustees that the institution disputes and is not able to resolve through the Commission's processes. This agreement follows procedures developed and published by the Commission. The institution also agrees to grant immunity to the Commission from claims of civil liability related to judgments made by the Commission or its agents in the course of its work of accrediting institutions provided that it was acting in good faith and within the scope of its responsibilities.

---

[3] The Appendix is attached hereto as Exhibit C

[4] This paragraph is also available at https://www.hlcommission.org/Policies/ obligations-of-affiliation.html, accessed July 6, 2018. Exh. 1 [Appx_090].

4

20. Through its legal counsel, Kettering College has requested arbitration with HLC in writing on September 12, 2017, March 1, 2018, and July 5, 2018. True and correct copies of the letters from Kettering College's counsel, Robert D. Crockett, to Barbara Gellman-Danley, President of HLC, dated September 12, 2017, March 1, 2018, and July 5, 2018 are attached to petitioner's accompanying Appendix as Exhibits 2 [Appx_244-262], 3 [Appx_264], and 4 [Appx_285-286], respectively, and incorporated herein.

21. HLC has ignored the College's arbitration demands and thereby refuses and/or fails to arbitrate the dispute with Kettering College. HLC has frustrated any administrative remedies otherwise available to Kettering College by refusing to grant, or even consider, whether Kettering College is exempt from the incorporation requirement.

## JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332, 20 U.S.C. § 1099b, and the Federal Arbitration Act, 9 U.S.C. §§ 1-16. Diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 because petitioner Kettering College is a citizen of the State of Ohio while respondent HLC is a citizen of the State of Illinois, and the amount in controversy exceeds $75,000.00. Jurisdiction under 28 U.S.C. §1331 exists because (a) HLC's accreditation authority and related decisions affect interstate commerce, thereby implicating federal question; and (b) at issue are Kettering College's constitutional right to the free exercise of religion and federal due process rights, and an actual controversy exists concerning the scope of HLC's authority to require separate incorporation and divestiture of its governing ties to the Church. U.S. Const. art. III, § 2; U.S. Const. amend. I.

23. This Court has personal jurisdiction over respondent HLC because the acts or omissions giving rise to the controversy occurred in the State of Ohio.

24. Venue is proper in this District under 9 U.S.C. § 204 as the controversy between the parties, save for the arbitration agreement, could have been brought in this district under 28 U.S.C. § 1391, subd. (b)(2) as a substantial part of the events giving rise to the dispute between the parties occurred in this district, the agreement to arbitrate was made in this district, and HLC's policy requiring arbitration covers every subject entity within this district. *See also*, 20 U.S.C. § 1099b(f).

## FACTUAL AND PROCEDURAL BACKGROUND

25. Kettering College was founded in 1967 by Eugene W. Kettering, who donated a 35-acre parcel of property for Kettering Medical Center (founded as Charles F. Kettering Memorial Hospital) and Kettering College.

26. Kettering College is "an adjunct of Kettering Medical Center," and the "purpose of the College is to provide quality science, allied health and nursing education in a setting consistent with the values of the Seventh-day Adventist Church. … As an integral part of the Seventh-day Adventist healthcare mission, the College shall be managed and operated in accordance with the values and principles of the Adventist education and healthcare missions." Kettering College Bylaws, Art. I. A true and correct copy of Kettering College's Bylaws dated February 14, 2012 is attached to petitioner's accompanying Appendix as Exhibit 5 [Appx_288-300] and incorporated herein.

27. Kettering College provides training in the Adventist tradition for health care professionals and offers certificate programs in the health sciences as well as two-year Associate of Science degrees, Bachelor of Science degrees, a Master of Physician Assistant Studies, and an Occupational Therapy Doctorate.

6

28. The Church's educational institutions, including Kettering College, provide instruction in how to be of service, and the healthcare institutions make the Gospel of Jesus practical by helping to restore people to health and by comforting those who suffer. All three entities—the Church, the school, and the hospital—work in mutually supportive ways to accomplish the special mission of Adventists.

29. The Church maintains control of the religious mission of Kettering College by ensuring that of its governing Board's thirteen members, seven are either Kettering Health Network or Church officers and two public members are Church members in good standing. Exh. 5, Kettering College Bylaws, Art. III, ¶ 2 [Appx_290].

30. The "Responsibilities of the Board" of Kettering College include the requirement to "[e]nsure that the College's objectives and major policies are in accord with the purpose, philosophy, mission, and values of Kettering Medical Center, and the Adventist education and healthcare missions …." Exh. 5, Kettering College Bylaws, Art III, ¶ 10(b) [Appx_293].

31. The Accrediting Association of Seventh-day Adventist Schools, Colleges and Universities ("AAA") first granted accreditation to Kettering College in 1967. The AAA recognizes that concurrent, regional accreditation is beneficial to the Church's educational institutions.

32. Kettering College received certificates of from the Ohio Board of Regents (now known as the Ohio Department of Higher Education) authorizing it to confer degrees. Any change in organizational structure or accreditation status may affect such authorizations.

33. Full regional accreditation was granted to Kettering College by HLC's predecessor, the North Central Association of Colleges and Schools ("NCA"), in 1974. Kettering College has maintained HLC accreditation ever since.

34. Kettering College also maintains various accreditations and memberships pertaining to its individual programs in Diagnostic Medical Sonography, Nursing, Physician Assistant Studies, Radiologic Sciences and Imaging, Respiratory Care, and Occupational Therapy, and the clinical facilities used by the college. The accrediting agencies for these programs require the institution maintain regional accreditation.

35. Other HLC-accredited institutions and institutions accredited by other regional accreditation agencies require regional accreditation for transferring credits or obtaining admission to post-baccalaureate degree programs.

36. College and university students may obtain federal grants or loans only from an "eligible institution." 20 U.S.C. § 1085(a). An "eligible institution" means "an institution of higher education." 20 U.S.C. § 1085(a)(1). The Higher Education Act of 1965 (20 U.S.C. §§ 1001 et seq., "HEA") defines an "institution of higher education" as one which is "accredited by a nationally recognized accrediting agency" and the Secretary of Education shall "publish a list of nationally recognized accrediting agencies." 20 U.S.C. § 4351(3). HLC is the listed agency for the region encompassing the State of Ohio.

37. The "pass-through" Medicare payments Kettering College receives for its "provider-operated" educational programs are permitted if and only if: (1) Kettering College is a department of Kettering Medical Center, with administrators, faculty and staff members who are employed by the Medical Center; (2) Kettering College runs under operating and capital budgets that are built into the budgets of Kettering Medical Center; (3) Kettering College offers programs and curricula that are subject to the approval of the Kettering Medical Center Board; and (4) Kettering College's own Board is under the legal control of the Kettering Medical Center Board.

8

38. On or about May 8, 2012, HLC advised Kettering College that pursuant to new Bylaws HLC adopted in 2010, new Eligibility Requirements it adopted in 2011, and new Criteria for Accreditation, Assumed Practices, and Obligations of Affiliation it adopted in 2012, Kettering College must incorporate as an entity separate from Kettering Medical Center no later than December 2014, and it must form "its own autonomous governing board with authority to … approve the annual budget and engage and terminate the Chief Executive Officer," to continue to be an HLC-accredited institution. A true and correct copy of a letter from Sylvia Manning, President of HLC, to Charles Scriven, President of Kettering College, dated May 8, 2012, is attached to petitioner's accompanying Appendix as Exhibit 6 [Appx_302-303] and incorporated herein.

39. HLC Policy: Jurisdiction No. INST.B. 10.010 (2012), ¶ 2 Incorporation, provides that an HLC-accredited institution must be "... incorporated as an institution of higher education in one of the 19 states of the north central region or operating under federal authority in conjunction with an executive branch or independent federal agency or branch of the U.S. military." Exh. 1 [Appx_063].

40. HLC Policy: Jurisdiction No. INST.B. 10.010 (2012), ¶ 1 provides that an "institution "must meet jurisdictional requirements, *as established in the Bylaws*, related to 1) incorporation and 2) substantial presence." (Emphasis added.) Exh. 1 [Appx_063].

41. Article III, Section 2 of HLC's Bylaws, adopted June 28, 2010, provide:

> The Commission shall extend accreditation and candidacy for
> accreditation to higher education institutions which are 1)
> registered to do business* or incorporated in … Ohio … or
> operating under federal authority … subject to provisions for
> application specified in Section 5 and 2) have substantial presence
> … in these states.

9

A true and correct copy of HLC's Bylaws is attached to petitioner's accompanying Appendix as Exhibit 7 [Appx_305-314] and incorporated herein. Exh. 7 [Appx_306].

42. Article III, Section 5 of HLC's Bylaws, which pertains to the application of the jurisdictional requirements, states:

> All institutions accredited by the Commission … on or after July 1, 2010 shall comply with substantial presence requirements no later than July 1, 2012 … All institutions accredited by the Commission … on July 1, 2010 shall be grandfathered from the requirement for incorporation in the region; such institutions known to be incorporated outside the region shall provide evidence of having registered within the region to do business no later than July 1, 2011.

Exh. 7 [Appx_305-307].

43. HLC Policy: Eligibility Requirements No. CRRT.A.10.010 only addresses when an institution has candidacy status for initial accreditation. Exh. 1 [Appx_016].

44. On or about December 27, 2012, Kettering College requested that HLC grant it an exemption from the requirement that an institution accredited by the Commission be a separately incorporated legal entity.

45. On or about April 3, 2013, HLC advised Kettering College that HLC "considered [an] exemption carefully … but decided against acting to approve or deny it. Instead the Board acted to instruct the Commission President and staff to work with institutions seeking the exemption to come into compliance with the incorporation requirement as soon as reasonably practical and to establish a time frame for institutions to demonstrate such compliance." HLC demanded "a detailed plan [for separate incorporation be] submit[ted] no later than June 3, 2013." A true and correct copy of a letter dated April 3, 2013 from Sylvia Manning, President of HLC, to Charles Scriven, President of Kettering College is attached to petitioner's accompanying Appendix as Exhibit 8 [Appx_316-317] and incorporated herein.

46. On or about December 1, 2014, HLC informed Kettering College that it has until December 2019 to complete the separate incorporation process. This "extended, firm deadline [was] offered in recognition of the negative impact … [that] … by separately incorporating, hospital-based colleges will cease to meet Medicare provider-operated criteria and will lose a substantial amount, if not all Medicare pass-through funding." A true and correct copy of a letter dated December 1, 2014 from Barbara Gellman-Danley, President of HLC, to Nathan Brandstater, President of Kettering College, is attached hereto as Exhibit 9 [Appx_319] and incorporated herein.

47. On or about September 12, 2017, Kettering College, by and through its counsel, requested that HLC reconsider its April 3, 2013, non-decision on Kettering College's request for an exemption and, alternatively, demanded arbitration. The September 12, 2017 letter detailed the grounds for its request for reconsideration, including its contention that HLC has "created restrictions, demands and rules that do not exist in HLC's published procedures," the critical nexus between regional accreditation and financial aid to students and programmatic accrediting agencies, and the constitutional concerns raised by HLC's demand that Kettering College be divested from Kettering Medical Center. Crockett Decl., ¶ 7, Exh. 2 [Appx_244-262].

48. Kettering College did not receive any response from HLC to its September 12, 2017 letter.

49. On or about March 1, 2018, nearly six months after demanding reconsideration or, alternatively, arbitration, Kettering College, by and through its counsel, emailed a letter to Lisa Noack, Assistant to the HLC President and Board, again requesting reconsideration of Kettering College's request for an exemption. Alternatively, Kettering College again demanded arbitration of the dispute. A copy of the September 12, 2017 correspondence was forwarded to

11

Ms. Noack with the March 1, 2018 letter. A true and correct copy of the March 1, 2018 email from Brian D. Walters to Lisa Noack or Barbara Gellman-Danley is attached to petitioner's accompanying Appendix as Exhibit 10 [Appx_321] and incorporated herein. Walters Decl., ¶ 5. *See also*, Crockett Decl., ¶ 9, Exh. 3 [Appx_264-283].

50. On or about March 2, 2018, Lisa Noack acknowledged receipt of the March 1, 2018 email and letter and September 12, 2017 correspondence and advised she would bring the letter to President Gellman-Danley's attention. A true and correct copy of Lisa Noack's March 2, 2018 email to Brian D. Walters is attached to petitioner's accompanying Appendix as Exhibit 11 [Appx_323] and incorporated herein. Walters Decl., ¶ 6.

51. On or about March 16, 2018, having not yet received a response, Kettering College's counsel placed a follow-up call to Ms. Noack. Ms. Noack acknowledged she discussed the issue with President Gellman-Danley and requested that counsel send a follow-up email. Walters Decl., ¶ 7.

52. On or about March 16, 2018, in accordance with Lisa Noack's request, Kettering College's counsel sent an email to Barbara Gellman-Danley's attention via Lisa Noack again requesting HLC reconsider Kettering College's request for an exemption or arbitrate the matter. A true and correct copy of Brian D. Walters' March 16, 2018 email to Lisa Noack is attached to petitioner's accompanying Appendix as Exhibit 12 [Appx_325-326] and incorporated herein. Walters Decl., ¶ 8.

53. On or about March 16, 2018, Ms. Noack acknowledged receipt of Kettering College's counsel's email and advised she would forward it to the appropriate individuals. A true and correct copy of Ms. Noack's March 16, 2018 email to Brian D. Walters is attached to

petitioner's accompanying Appendix as Exhibit 13 [Appx_328-329] and incorporated herein. Walters Decl., ¶ 9.

54. On or about March 20, 2018, Dr. Anthea Sweeney, HLC's Vice President for Legal and Government Affairs, left a voicemail at the Crockett & Associates office manager's extension acknowledging counsel's conversation with Lisa Noack and stating she or President Gellman-Danley was "looking into the matter." Walters Decl., ¶ 10.

55. On or about March 27, 2018, Kettering College, by and through its counsel, telephoned and emailed Dr. Sweeney requesting a status update or response to its request for arbitration. Counsel did not receive any response. A true and correct copy of Brian D. Walters' March 27, 2018 email to Anthea Sweeney is attached to petitioner's accompanying Appendix as Exhibit 14 [Appx_331] and incorporated herein. Walters Decl., ¶¶ 11-12.

56. On or about May 9, 2018, Kettering College, by and through its counsel, proposed a face-to-face meeting in Chicago and requested a response no later than May 21, 2018. A true and correct copy of Brian D. Walters' May 9, 2018 email to Anthea Sweeney is attached to petitioner's accompanying Appendix as Exhibit 15 [Appx_333-334] and incorporated herein. Walters Decl., ¶ 13.

57. On or about May 17, 2018, Dr. Sweeney responded that HLC would respond to that request in early July with a few date options in August. A true and correct copy of Anthea Sweeney's May 17, 2018 email is attached to petitioner's accompanying Appendix as Exhibit 16 [Appx_336-338] and incorporated herein. Walters Decl., ¶ 14.

58. Having not heard from HLC regarding dates for the proposed face-to-face meeting, on or about July 5, 2018, Kettering College again demanded arbitration of the dispute between it and HLC regarding HLC's requirement that Kettering College separate itself from

Kettering Medical Center and incorporate and form a separate, independent governing board, setting a July 13, 2018 response deadline. Crockett Decl., ¶ 14, Exh. 4 [Appx_285-286].

59. On or about July 12, 2018, HLC advised Kettering College and "similarly-situated institutions" that "the HLC Board has *temporarily suspended* [the December 31, 2019] deadline … pending completion of [its] review" of HLC policy as it relates to the incorporation status of affiliated institutions in light of materials submitted by "affiliated special-focus institutions" and "the proposed … Making the Education of Nurses Dependable for Schools Act ("M.E.N.D. Act")." A "final determination as to whether to continue maintaining the separate incorporation requirement for already affiliated institutions" will be made at the HLC Board's November 2018 meeting. (Emphasis added.) A true and correct copy of the July 12, 2018 letter from Barbara Gellman-Danley, President of HLC, to Kettering College is attached to petitioner's accompanying Appendix as Exhibit 18 [Appx_343-344] and incorporated herein. Crockett Decl., ¶ 15.

60. The M.E.N.D. Act, in its most recent iteration, addresses Medicare funding eligibility; it does not address the issue of a religious educational institution being required to form a separate, independent governing board, thereby divesting itself of its Church guidance and affiliation.

61. Nothing in the July 12, 2018 letter from HLC responds to Kettering College's requests for arbitration.

62. Nothing in the July 12, 2018 letter from HLC indicates HLC will address the issue of whether its separate incorporation requirement would violate Kettering College's right to free exercise of religion at its November 2018 board meeting.

14

63. If Kettering College's regional accreditation from HLC is withdrawn, revoked, or terminated, Kettering College will cease to obtain funding for its educational programs through Medicare "pass-through" funding. The estimated value of such Medicare funding exceeds $75,000.00.

64. If Kettering College's regional accreditation from HLC is withdrawn, revoked, or terminated, Kettering College will lose a significant number of students, both current and future. Consequently, Kettering College will lose funding for its educational programs that comes from student tuition. Even the issuance of a preliminary noncompliance letter to Kettering College would trigger a notification requirement to Kettering students that would cause an immediate and substantial loss of students and thus, their funding. The estimated value of such funding exceeds $75,000.00.

65. Kettering Medical Center's value as a teaching hospital will also be adversely affected by any withdrawal, revocation, or termination of Kettering College's regional accreditation.

66. Federal regulation anticipates that religious bodies may control the operations of a college. The HEA recognizes the obligation of an accrediting agency to acknowledge that one or more of its institutions may have a "religious mission[]." 20 U.S.C. § 1099b; *see also* 34 C.F.R. § 602.18 ("The agency must consistently apply and enforce standards that respect the stated mission of the institution, including religious mission . . . ."). If the Adventists surrender curriculum and funding control to a secular body, then the religious mission may be easily frustrated.

## COUNT 1

### (Application for Order Compelling Arbitration Pursuant to 9 U.S.C. § 4)

67. Kettering College realleges and incorporates by reference each allegation contained in paragraphs 1 through 66, above, as though fully set forth herein.

68. HLC's Policy No. INST.B.30.020, titled, "Institutional Obligations of Affiliation," at Paragraph 13, requires that any dispute between HLC and an accredited institution be arbitrated:

> 13. The institution agrees to accept binding arbitration in the event of an action by the Commission's Board of Trustees that the institution disputes and is not able to resolve through the Commission's processes. This agreement follows procedures developed and published by the Commission. The institution also agrees to grant immunity to the Commission from claims of civil liability related to judgments made by the Commission or its agents in the course of its work of accrediting institutions provided that it was acting in good faith and within the scope of its responsibilities.

Exh. 1 [Appx_090].

69. By requiring an accredited institution to agree to binding arbitration as one of its "Institutional Obligations of Affiliation," HLC has required that any dispute between HLC and an institution that is not resolved through HLC's processes shall be adjudged through arbitration.

70. An actual dispute exists between the parties as HLC has failed to make an official determination regarding Kettering College's request for an exemption to HLC's separate incorporation requirement based on its unique status as a religious institution.

71. HLC continues to maintain that it has the right and authority to force Kettering College to separately incorporate or have its accreditation revoked. Thus, an actual dispute also exists between the parties as to the scope of HLC's authority under its own bylaws to require any educational institution to separately incorporate as a condition of accreditation or membership.

16

72. As a regional accreditor, HLC engages in interstate commerce by regulating accreditation of colleges and universities across 19 states, including the State of Ohio.

73. Kettering College demanded that HLC submit the subject dispute to arbitration on at least three separate occasions. Exhs. 2, 3, 4 [Appx_244-286].

74. HLC has failed to respond to Kettering College's demands to submit the subject dispute to arbitration. Thus, court intervention is ripe. "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4; *see also*, *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991).

## **PRAYER FOR RELIEF**

Wherefore, Petitioner Kettering College prays for relief as follows:

1. An order compelling Respondent HLC to arbitrate the dispute that has arisen between Kettering College and HLC regarding Kettering College's accreditation;

2. Costs, attorneys' fees, and interest thereon, as provided by law; and

17

3. Any such other relief as this Court deems just and proper.

| | |
|---|---|
| August 15, 2018 | /s/ Eric W. Richardson<br>Eric W. Richardson (0066530)<br>*Trial Attorney*<br>Jacob D. Mahle (0080797)<br>Vorys, Sater, Seymour and Pease, LLP<br>301 East Fourth Street<br>Suite 3500, Great American Tower<br>Cincinnati, OH 45202<br>Tel: 513-723-4000<br>Fax: 513-852-7885<br>ewrichardson@vorys.com<br>jdmahle@vorys.com<br><br>Robert D. Crockett<br>Brian D. Walters<br>Crockett & Associates<br>23929 Valencia Blvd.<br>No. 303<br>Valencia, CA 91355<br>Tel: 323-487-1101<br>Fax: 323-843-9711<br>bob@bobcrockettlaw.com<br>waltersb@bobcrockettlaw.com<br>*Pro Hac Vice* motions forthcoming<br><br>***Attorneys for Plaintiff Kettering College*** |